TRACY L. WILKISON
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
JERRY C. YANG
Assistant United States Attorney
Chief, Riverside Branch Office
CHRISTIAN R. ACEVEDO (Cal. Bar No. 323718)
Special Assistant U.S. Attorney
Riverside Branch Office
     3403 10th Street, Suite 200
     Riverside, California 92501
     Telephone: (951) 276-6922
     Facsimile: (951) 276-6202
     E-mail:    christian.acevedo@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ED CR 20-238-DSF |
| Plaintiff, | <u>GOVERNMENT'S SENTENCING POSITION FOR DEFENDANT JIMMY ALEX GONZALEZ, JR.</u> |
| v. | |
| JIMMY ALEX GONZALEZ, JR., | Hearing Date: November 1, 2021 |
| Defendant. | Time: 8:30 a.m.<br>Courtroom of the Honorable<br>Dale S. Fischer |

Plaintiff, United States of America, by and through its attorney of record, the Acting United States Attorney for the Central District of California, and Special Assistant United States Attorney Christian R. Acevedo, hereby files its Sentencing Position for defendant Jimmy Alex Gonzalez, Jr.

//

//

This Sentencing Position is based upon the attached memorandum of points and authorities, the files and records in this case, the United States Probation Office's Presentence Investigation Report and such further evidence and argument as the Court may permit.

Dated: October 18, 2021          Respectfully submitted,

                                 TRACY L. WILKISON
                                 Acting United States Attorney

                                 SCOTT M. GARRINGER
                                 Assistant United States Attorney
                                 Chief, Criminal Division

                                 JERRY C. YANG
                                 Assistant United States Attorney
                                 Chief, Riverside Branch Office


                                 */s/ Christian R. Acevedo*
                                 CHRISTIAN R. ACEVEDO
                                 Special Assistant U.S. Attorney
                                 Riverside Branch Office

                                 Attorneys for Plaintiff
                                 UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.  INTRODUCTION**

Defendant Jimmy Alex Gonzalez, Jr. ("defendant") shamelessly partook in a widespread mail theft, identity theft, and bank fraud scheme.  The government respectfully requests that the Court impose a sentence of 42 months' imprisonment (18 months on the bank fraud count, and an additional 24 months for the aggravated identity theft count), followed by a three-year term of supervised release, and that the Court order defendant to pay $2,685 in restitution and a $200 special assessment.  This sentence is warranted based on defendant's calculated choice to steal from and defraud members of his community, the absence of significant mitigating circumstances, and defendant's criminal history.

**II.  STATEMENT OF FACTS**

Beginning on a date unknown and continuing until at least on or about June 24, 2020, in Riverside and San Bernardino Counties, within the Central District of California, and elsewhere, defendant and his co-defendant, Julian Garcia III ("Garcia"), knowingly and with intent to defraud, executed a scheme to obtain money, funds, credits, assets, and other property in the custody and control of federally insured financial institutions ("banks") by means of material false and fraudulent pretenses, representations, and promises, and the concealment of material facts.  (Plea Agreement, ECF No. 81, ¶ 14.)

Defendant's bank fraud scheme involved stealing mail and redirecting victims' mail to an address belonging to defendant and Garcia using United States Postal Service ("USPS") change of address forms.  Defendant and Garcia would steal checks, debit cards, and

credit cards from the mail and use them for their own benefit. Defendant and Garcia would also use the stolen and redirected mail to amass a collection of bank account information and personally identifiable information ("PII") belonging to real persons. Id.

Defendant and Garcia would use the information to fraudulently open lines of credit and checking accounts at banks in the names of victims, without authorization. Defendant and Garcia would also rely on the information to aid in the altering of checks and creation of counterfeit checks, including making fraudulent checks to appear to be made payable to defendant and others. Defendant and Garcia would then cash or deposit the stolen, altered, and counterfeit checks at banks. Finally, defendant and Garcia would use unauthorized lines of credit and unauthorized bank accounts to make unauthorized purchases at retail locations or to obtain cash from Automated Teller Machines ("ATMs"). Defendant and Garcia acted with intent to defraud in that they acted with an intent to steal from and cheat the banks. Id.

In furtherance of the scheme, defendant committed acts meant to defraud the financial institutions, including the following acts:

On or about May 25, 2020, defendant deposited a stolen City National Bank check in the amount of $895, drawn from victim Placer Title Company's checking account and modified to be made payable to "J.D.G." into a Navy Federal Credit Union account, using an ATM in Riverside, California. Id.

On or about May 28, 2020, defendant deposited a stolen City National Bank check in the amount of $895, drawn from victim Placer Title Company's checking account and modified to be made payable to

"J.D.G." into a Navy Federal Credit Union account, using an ATM in Riverside, California. Id.

On or about May 28, 2020, defendant used a Navy Federal Credit Union account, opened with victim J.D.G.'s personal identifying information, to obtain a $25,300 check at a Navy Federal Credit Union branch in Riverside, California. In so doing, defendant knowingly possessed and used, without lawful authority, means of identification that defendant knew belonged to another person, namely, victim J.D.G.'s name and a Navy Federal Credit Union account number ending in 9319, during and in relation to the offense of Bank Fraud, a felony violation of Title 18, United States Code, Section 1344(2), as charged in Count Five of the Indictment in this case. Id.

On or about May 29, 2020, defendant deposited a stolen United States Treasury check issued to victims O.T. and T.T. in the amount of $2,400 into a Navy Federal Credit Union account, using an ATM in Riverside, California. Id.

On or about June 5, 2020, in San Bernardino County, within the Central District of California, defendant and another person, each aiding and abetting the other, unlawfully possessed mail and mail matter that had been stolen and taken from the United States mail, namely, approximately eight pieces of mail and mail matter addressed to various individuals and businesses within San Bernardino County and elsewhere, and at that time and place, defendant knew that said mail and mail matter were stolen. Id.

Defendant and Garcia's conduct resulted in at least $36,000 in intended losses, calculated using the face value of any checks or other negotiable instruments they unlawfully possessed or negotiated

3

and the dollar value of any fraudulent bank or retail transactions. In total, defendant and Garcia victimized at least 43 different people or businesses by possessing their mail, PII, bank information, checks or other negotiable instruments with fraudulent intent, and by using them to their benefit without lawful authority or authorization.  Id.

### III. GUIDELINES AND CRIMINAL HISTORY CALCULATION

On September 22, 2021, the United States Probation Office ("USPO") disclosed its Presentence Report ("PSR"), calculating a guidelines range of 30 to 37 months for count five (18 U.S.C. § 1344(2): Bank Fraud), based on an offense level of 13 and a criminal history category of V.  The PSR found that the following factors applied:

    Base Offense Level:      7   U.S.S.G. § 2B1.1(a)(1)
    Loss over $40,000       +6   U.S.S.G. § 2B1.1(b)(1)(D)
    Over 10 victims         +2   U.S.S.G.§ 2B1.1(b)(2)(A)

The USPO further noted that the 24-month term of imprisonment on count nine (18 U.S.C. § 1028A: Aggravated Identity Theft) must be imposed consecutively (PSR Guideline Summary at Page 3.)

The plea agreement set forth the following sentencing calculation:

    Base Offense Level:      7   U.S.S.G. § 2B1.1(a)(1)
    Loss over $15,000       +4   U.S.S.G. § 2B1.1(b)(1)(E)
    Over 10 victims         +2   U.S.S.G.§ 2B1.1(b)(2)(A)
    Use of ID to Obtain ID  +2   U.S.S.G.§ 2B1.1(b)(11)(C)

The government concurs with the PSR's calculation of defendant's criminal history.  The government, however, objects to the PSR's loss

4

calculation because a $2,400 check used to calculate the loss amounts was "double counted." In other words, one check was both counted as a deposit and a cash withdrawal. Because the intended loss amount spreadsheet provided to the USPO just crossed the threshold into $40,000, subtracting the $2,400 brings it under that threshold, which led the parties to an agreement which left the calculation at over $15,000. The government concedes that, because defendant has pleaded guilty to a 1028A count, the "Use of ID to Obtain ID" enhancement does not apply. With an offense level of 11 and a criminal history category of V, defendant's sentencing Guidelines range is 24 to 30 months of imprisonment for his bank fraud conviction, plus the 24 month consecutive sentence under 1028A. The government further recommends a downward variance because the defendant has taken steps to mitigate the spread of COVID-19 by agreeing to make all future appearances virtually.

**IV. GOVERNMENT'S SENTENCING RECOMMENDATION**

18 U.S.C. § 3553(a) sets forth factors for the Court to consider alongside the Guideline range. A sentence of 42 months' imprisonment is appropriate in light of "the nature and circumstances of the offense," "the history and characteristics of the defendant," and the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," and "to afford adequate deterrence to criminal conduct." 18 U.S.C. §§ 3553(a)(1), (a)(2)(A), and (a)(2)(B).

**A. Seriousness of the Offense**

Defendant's scheme was far-reaching and had a drastic impact on the community. Defendant victimized citizens within the Central

District who entrusted the U.S. Postal Service with safeguarding financial and personal documents.  Defendant was relentless in stealing mail to fuel his fraudulent scheme.  Defendant's indifference for the rule of law is apparent given that his behavior was fueled by selfishness and greed, rather than desperation.  Indeed, this case is the opposite of "stealing a loaf of bread to feed one's family," given that defendant stole and defrauded his fellow citizens to buy himself a new car.  (PSR ¶ 24.)  Further, people use the mail every day, as well as checks and credit cards, and they do so with the expectation that their mail, checks, and credit card information will not be stolen and abused.  Defendant's crime exposed the public to tangible harm and undermined public confidence in the mail system, and his sentence must reflect that impact.

Accordingly, a 42-month sentence would promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, and will protect the public from further crimes.  See 18 U.S.C. § 3553(a)(2).

**B.   Nature of the Offense and Defendant's History**

The Court should consider the nature and circumstances of the offense and the history and characteristics of defendant.  18 U.S.C. § 3553(a)(1).  As discussed above, the offense involved a brazen theft and fraud scheme that impacted citizens all throughout the Central District of California.

Defendant also has a history of failing to respect the law.  Before this case even began, defendant was on probation for unlawful use of identifying information.  (PSR ¶ 69.)

Prior to that, was convicted in 2018 for unlawful possession of personally identifying information.  (PSR ¶ 66.)

Prior to that, served 180 days in jail, and an additional 60 days upon probation modification, in a case where he used the personal identification of another to obtain credit.  (PSR ¶ 66.)

Yet before that, in 2016, was handed a 36-month probation sentence for receipt of stolen property.  (PSR ¶ 63.)

Defendant's criminal record can be traced as far back as 2014, where his disregard for the law began, when he was convicted of a misdemeanor offense of evading railroad fare.  (PSR ¶ 62.)

Clearly, defendant's prior sentences have done little to deter him from committing future crimes.  Moreover, he has already been sentenced for the same kind of crimes (stealing identifying information belonging to others) and continues to commit these offenses now.  It is time to up the ante to send a message to defendant that his conduct is not only reprehensible but comes with consequences.

To his credit, and as evidence in mitigation, defendant informed the government he intended to plead guilty well before the trial date, which "permitted the government to avoid preparing for trial and permitted the government and the court to allocate resources efficiently."  See U.S.S.G. §3E1.1(b).  Also, because defendant agreed to proceed with the remainder of his case over video teleconference and telephone, rather than appearing in person, he has chosen to help prevent the spread of COVID-19.  The government, accordingly, recommends a downward variance for defendant, after

taking into account his timely acceptance of responsibility during the ongoing COVID-19 pandemic.

Consideration should also be paid to defendant's troubled past. After defendant's father left him, he was left to be raised by his mother, who was addicted to methamphetamine and began using methamphetamine with him. After defendant's incarceration in the instant case, defendant asked his mother to stop using methamphetamine, and she did. (PSR ¶ 85.) Thereafter, defendant's mother was diagnosed with cancer. (PSR ¶ 88.)

Given defendant's early acceptance of responsibility and willingness to mitigate COVID-19 spread through virtual appearances, as well as defendant's willingness to turn his family's drug addicted life around, a sentence of 42 months' imprisonment is an appropriate sentence.

### C. Restitution

Consistent with the plea agreement in this case, the government respectfully requests the Court order defendant to pay total restitution in the amount of $2,685 to one victim: Processing Done Right.

## V. CONCLUSION

The government respectfully recommends that the Court impose a sentence of 18 months' imprisonment on the bank fraud count, followed by the consecutive 24 months on the 1028A count, for a total of 42 months, followed by a three-year period of supervised release, and a mandatory special assessment of $200. The government further recommends that defendant be ordered to pay $2,685 in restitution to the institution he victimized.